# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-3010**

**September Term, 2025**

FILED ON: MARCH 31, 2026

UNITED STATES OF AMERICA,
    APPELLEE

v.

DEENVAUGHN ROWE, ALSO KNOWN AS DEEN VAUGHN,
    APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cr-00144-1)

Before: MILLETT, WILKINS, and GARCIA, *Circuit Judges*.

## J U D G M E N T

The causes came to be heard on the record on appeal from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The panel has accorded these issues full consideration and decided that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is hereby

**ORDERED** and **ADJUGED** that the judgment of the United States District Court for the District of Columbia be **AFFIRMED**.

\*  \*  \*

In July 2017, Deenvaughn Rowe was sentenced to 97 months' imprisonment and 48 months' supervised release after being convicted of one count of conspiracy to commit bribery, one count of substantive bribery, and one count of conspiracy to distribute marijuana. Rowe appealed and challenged his conviction, further alleging that his trial counsel had been ineffective. We affirmed the judgment but remanded the case to the District Court to hold an evidentiary hearing on Rowe's "colorable" ineffective assistance of counsel ("IAC") claim. *United States v. Norman*, 926 F.3d 804, 813–814 (D.C. Cir. 2019).

1

Rowe asserted on remand that his trial counsel was ineffective for failing to investigate and obtain testimony from certain witnesses and review relevant discovery with Rowe. After an evidentiary hearing, the District Court denied all of Rowe's IAC claims. *United States v. Rowe*, No. 16-cr-144-1, 2023 WL 346093 (D.D.C. Jan. 19, 2023). Rowe timely appealed.

Finding no error in the judgment below, we affirm. Rowe has failed to demonstrate that any alleged deficiencies in counsel's performance were prejudicial under *Strickland v. Washington*, 466 U.S. 668 (1984).

**I.**

A fuller enumeration of the facts can be found in this Court's opinion in *United States v. Norman*; only the most salient facts related to Rowe's IAC claim are set forth below.

In 2017, Rowe was the acting station manager at River Terrace Post Office in Northeast Washington, D.C. Viewing the factual record in the light most favorable to the jury's verdict, Rowe utilized his position to track packages containing contraband from western states, and upon their arrival, he would send two other postal employees to deliver those packages to individuals on the street rather than to the delivery addresses on the packages. 926 F.3d at 807–08. The government presented a plethora of evidence at trial to demonstrate Rowe's guilt. The two most important to Rowe's IAC claims were (1) surveillance-captured queries and searches from Rowe's workstation computer showing that he was monitoring and intercepting mail containing drugs and (2) Rowe's "unexplained wealth"—including the ownership of two luxury cars, 12 cash deposits totaling approximately $48,000, and three vacations to the Caribbean—which the government argued could not be attributed to Rowe's $16,000 annual take-home pay. *Id*. at 808.

To help rebut the government's evidence pointing to Rowe tracking and scanning the relevant packages, Rowe provided his trial counsel with a list of four people who he claimed would be able to verify that other employees retained and used Rowe's login information on numerous occasions. While Rowe's counsel spoke with two of these individuals, counsel opted not to interview the other two and subsequently decided not to call any of those witnesses to testify at trial. Instead, to raise doubt about the government's presented evidence on Rowe's computer usage, Rowe's trial counsel utilized the government's own exhibit to demonstrate that multiple people could be logged into Rowe's computer at once. Additionally, counsel attempted to elicit on cross-examination of government witnesses that the computers at the post office were "not secure." J.A. 350.

To rebut the government's evidence of Rowe's "unexplained wealth," Rowe told counsel that he had additional streams of lawful income. One such stream was Rowe's gambling winnings from the racetrack and a football pool. While Rowe and his counsel discussed hiring an investigator to interview individuals at the racetrack regarding Rowe's gambling earnings, counsel summarily decided against this path after discussions with Rowe on this topic went "nowhere." J.A. 325–27. To verify Rowe's football pool winnings, Rowe suggested that counsel should interview an individual named April Crankow. Counsel ultimately did not do so,

but testified at the evidentiary hearing that he spoke to someone about the same topic, though he could not recall whom. Rowe also informed counsel about his second stream of lawful income, a restaurant, and suggested that counsel speak with Rowe's business partner. Counsel interviewed Rowe's business partner, but decided against calling the partner or the witness who could testify to the football pool, noting at the evidentiary hearing that "[w]e could not develop the kind of money we needed." J.A. 327. At trial, Rowe's counsel presented no witnesses to testify to Rowe's lawful streams of income, instead highlighting that the government had presented no physical evidence that any of Rowe's money was illegally obtained.

Rowe was ultimately convicted by the jury. He appealed his convictions and further alleged that his trial counsel was ineffective. The D.C. Circuit affirmed Rowe's convictions, but, consistent with our general practice, remanded the case to the District Court to consider Rowe's "colorable" IAC claims in the first instance. *Norman*, 926 F.3d at 813–814; *see also United States v. Rashad*, 331 F.3d 908, 911–912 (D.C. Cir. 2003) (explaining that we do not normally resolve IAC claims on direct appeal).

## II.

On remand, Rowe asserted his counsel was deficient for: (1) failing to hire an investigator to verify Rowe's claimed additional sources of income; (2) failing to investigate and call witnesses who could testify that employees often used Rowe's login or testify to Rowe's lawful streams of income; and (3) neglecting to review relevant discovery with Rowe. As relevant to this last assertion, Rowe and his trial counsel's testimony differed at the evidentiary hearing, with Rowe alleging that he had not seen key pieces of evidence such as text messages between himself and his co-defendants and phones found in Rowe's house and car. Rowe's counsel conceded that he had not shared all the discovery with Rowe but maintained that the only discovery he neglected to review with him was evidence irrelevant to Rowe, such as "empty mail trucks and the pass-offs [between co-defendants and the buyers] in the street." J.A. 351.

The evidentiary hearing was held on October 15, 2021, and only Rowe and his trial counsel testified. Rowe did not submit any additional affidavits or evidence for the District Court's consideration. On January 19, 2023, the District Court issued a memorandum opinion denying all of Rowe's IAC claims. Rowe timely appealed. This Court reviews *de novo* the denial of an IAC claim. *United States v. Henderson*, 108 F.4th 899, 902 (D.C. Cir. 2024).

## III.

Under longstanding Supreme Court precedent set forth in *Strickland v. Washington*, when a defendant alleges that his counsel has been ineffective, he must successfully demonstrate two components. Under the first prong, he must show that his counsel made errors that are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Under the second prong, the defendant must demonstrate that counsel's deficiencies were prejudicial, *i.e.*, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Courts are not required "to approach the inquiry in the same order or even to address both

components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Here, there is no reason for this Court to analyze whether Rowe's counsel was deficient, as Rowe has clearly failed to demonstrate that he was prejudiced by any of the alleged deficiencies. *See Henderson*, 108 F.4th at 903 (quoting *Strickland* to highlight that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed"). Rowe has presented zero evidence—no affidavits, no additional witnesses, no documents—demonstrating that if counsel had interviewed and/or called all four witnesses related to multiple logins, the witnesses would have proffered testimony that would have affected the outcome of the trial, especially since Rowe's counsel had already elicited on cross-examination testimony about the ease of logging into Rowe's and other computers within the office. Similarly, Rowe has presented nothing showing that had his counsel interviewed the individual from the football pool and/or called Rowe's business partner to testify, their proffered testimony would have been favorable. This is plainly not enough to uphold Rowe's burden under *Strickland*. 466 U.S. at 687 (explaining that the prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial"); *see also United States v. Valencia-Rios*, 639 F. Supp. 2d 98, 107 (D.D.C. 2009), *aff'd*, 391 F. App'x 885 (D.C. Cir. 2010) (finding that the defendant failed to demonstrate prejudice where he did not show what the proffered testimony of the proposed witnesses would be, nor did he show what their impact would have been on the outcome of his case).

Additionally, Rowe has also failed to demonstrate that he was prejudiced by his counsel's alleged neglect in reviewing certain discovery with Rowe. Even assuming that we credit Rowe's testimony over his counsel's—who asserted that he had reviewed all relevant evidence with Rowe—Rowe has not plausibly explained anywhere in the record the significance of the discovery and how it would have impacted trial preparation such that the outcome of his case would have been different had he seen all the discovery that he alleges to have missed. While Rowe suggested that had he known all the evidence he would have considered pleading guilty, *see* Appellant Br. at 21, the record below is clear that that there was no plea offer for Rowe to take. J.A. 92. Rowe's failure to demonstrate prejudice as to any of his IAC claims dooms his appeal.[*]

\* \* \*

For the foregoing reasons, we affirm the District Court's ruling denying Rowe's IAC claims.

---

[*] Prior to submitting briefing in this appeal, Rowe also filed a second Motion to Remand, claiming that his remand counsel was ineffective because she had failed to raise prejudice arguments at Rowe's evidentiary hearing. Motion to Remand, *United States v. Rowe*, No. 23-3010. We ordered Rowe to address his Motion to Remand in his opening brief. Because Rowe did not do so, we hold that the arguments therein have been forfeited, and accordingly, deny the motion. *See Williams v. Romarm, SA*, 756 F.3d 777, 783 (D.C. Cir. 2014) ("Questions not presented and argued by the parties in a sequence affording appropriate consideration are forfeited[.]"); *World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1160 (D.C. Cir. 2002) ("As we have said many times before, a party waives its right to challenge a ruling of the district court if it fails to make that challenge in its opening brief.").

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

## Per Curiam

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk